THE PEOPLE OF THE STATE OF NEW YORK, PLAINTIFFS.
*v.* THE STATE BANK OF FORT EDWARD, DEFENDANT.

36 607
27ap444
36h    607
79 AD³266

*Deposit of money by a husband to the credit of his wife—when it operates as a gift—agreement of a cashier — when it is not binding upon the bank.*

May 23, 1883, John Osgood deposited with the defendant bank $900 belonging to him to the credit of his wife Sarah, notifying the cashier that the money was his, and that he would let the amount rest in that way for a short time. The wife was sick, and the deposit was so made to appease and please her. Subsequently the wife drew checks upon this account, which were paid. Thereafter the wife died intestate, and before any administrator had been appointed, the cashier of the bank agreed with the husband that the husband should be allowed to overdraw his own account, and that the checks should be paid out of the money standing to the credit of his wife. Subsequently a receiver of the bank was appointed, Osgood's account being then overdrawn to the amount of $313.05, and there being then standing to the credit of the wife $856.72.

With the consent of the administrator of the wife, and of her heirs and next of kin, Osgood applied to have the debt due from him set off against an equal amount of the deposit standing to the credit of his wife and to have the balance of that deposit transferred to his credit.

*Held,* that the application should be denied.

That the deposit of the money to the credit of the wife, and her acceptance thereof, signified by her drawing checks against it, operated as a valid gift thereof to her; and that thereafter the husband could not reclaim it, nor could the bank deny its liability to her.

That the agreement of the cashier was not binding upon the bank, as it was *ultra vires* and without consideration.

That there was no estoppel as to Osgood, as the money was received by him.

APPEAL from an order made at a Special Term, granting to the petitioner the relief demanded by him.

John Osgood, the petitioner, on the 23d day of May, 1883, deposited $900 to the credit of his wife Sarah C., in the State Bank

of Fort Edward, and gave to her the bank book showing the deposit. Subsequently, in June and July, she drew checks on this amount, which were paid, and when the receiver took possession of the bank there remained to her credit, including interest, $856.72. The money, before it was deposited, was the property of John Osgood. His wife was sick, and his motive in making this deposit was to appease and please her. She died intestate about four months after the deposit was made and about a year before the appointment of a receiver of the bank. Osgood himself kept an account in the bank, which, at the time of the appointment of the receiver, was overdrawn to the amount (including interest) of $313.05. The administrator of Sarah C. conceded that the money thus standing to her credit was never her property, but was the property of John Osgood; and the heirs and next of kin of Sarah C. made the same concession.

After the death of Sarah C., and before the appointment of an administrator on her estate, and in April, 1884, the cashier of the bank agreed with Osgood that the amount of a check which Osgood was about to draw (and which would overdraw his account), and other checks which Osgood should make, should be paid out of the money standing to the credit of said Sarah C. (then deceased), and Osgood accordingly did make such checks. These were paid by the bank, but were charged against his individual account. The bank became insolvent and a receiver was appointed September 22, 1884. Osgood now asks that the overdraft of his account be offset against the amount standing in the name of Sarah C., and that the balance of the amount standing in her name (above such offset) be transferred to his credit. The Special Term granted this relief, and the receiver and attorney general appeal.

*D. O'Brien,* attorney general, and *D. S. Potter,* for the receiver, appellant.

*Edgar Hull,* for John Osgood, respondent.

Learned, P. J.:

If the bank were solvent, no one would be interested to oppose this application except the administrator and next of kin of Sarah C. But the bank is insolvent, and therefore the interests of other

creditors are affected. The consent therefore of the administrator and of the next of kin does not determine the matter. It must be determined as a matter of strict legal right. (*Van Dyck* v. *McQuade*, 20 Hun, 262.)

The agreement alleged to have been made by the cashier in April, 1884, is of no validity. There was no consideration. It was simply an agreement to pay Osgood's checks and to charge the amount thereof against the account of another person then deceased. Such an agreement could not be binding on the bank. To the extent to which Osgood overdrew he owed the bank for money received. A cashier has no authority to permit a person to overdraw his account, promising to charge the drafts against some other person, without that person's consent. There is no estoppel in Osgood's favor. He has had the money. No agreement between him and the cashier could change the rights of Sarah C. or of her representatives.

Then we must go to the original deposit and arrangement. Osgood says that at the time of the deposit he notified the cashier " that the amount thereof was his money and he would let the amount rest in that way for a short time." And the cashier says that this is true according to his recollection. Now undoubtedly the money deposited was, before the deposit, Osgood's money. The question is whose was it, or rather whose was the credit, after the deposit. Of course the actual money deposited went into the general assets of the bank. But it gave credit therefor to Sarah C., or became indebted to her, and issued to her the ordinary evidence of indebtedness, viz., a bank book. This made a complete gift to her. The motives of Osgood are immaterial. What he did was to give his wife $900 by depositing that amount to her credit in the bank. She accepted the gift, as is evidenced by her drawing checks on the credit. He could not reclaim the money. The bank could not deny its liability to her. Indeed, it appears that the bank treated it as her money, because it paid her checks and charged them against this credit. Osgood had done everything possible to give his wife an absolute title to this credit. And he had done this voluntarily, with no fraud practiced upon him. (*Bates* v. *First Nat. Bank of Brockport*, 89 N. Y., 286.)

The receiver cannot be permitted to give up the valid claim

which he has against Osgood by setting off against it a part of the claim of the administrator of Sarah C., a claim which will be entitled only to its *pro rata* of the assets.

Order reversed, with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs.

Present — LEARNED, P. J., BOCKES and LANDON, JJ.

Order reversed, with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs.